1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

NORTHERN DISTRICT OF CALIFORNIA

8

SAN JOSE DIVISION

9

10
11
12
13
14
15

| COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, | ) ) ) | Case No. 5:14-cv-01518-PSG |
| Plaintiff, | ) ) | **ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) | |
| AETNA LIFE INSURANCE COMPANY, et al., | ) ) | **(Re:  Docket No. 29)** |
| Defendants. | ) ) | |

16        Two years ago, a patient insured by Defendant Aetna Life Insurance Company sought

17 treatment on three separate occasions from Plaintiff Community Hospital of the Monterey

18 Peninsula.  Aetna verified that the patient was eligible for coverage, but refused CHOMP's demand

19 that it pay 100 percent of the charges billed.  CHOMP then filed this suit against Aetna, alleging

20 that Aetna's refusal to pay $167,704.11 plus interest constituted, among other things, negligent

21 misrepresentation, breach of implied contract and unfair competition.[1]  Aetna now seeks summary

22 judgment on all but one of CHOMP's claims.  With certain exceptions noted below, the court

23 agrees with Aetna that the causes of action at issue do not concern disputed material facts and must

24 be resolved in Aetna's favor as a matter of law.

25
26
27

[1] *See* Docket No. 1, Exh. A at ¶¶ 21-60.

28

# I.

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case.[2]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[3]  All evidence must be viewed in the light most favorable to the non-moving party.

CHOMP is a health care provider doing business primarily in Monterey County, California. Aetna provides and administers health care benefits plans to members.  CHOMP and Aetna "had a preferred provider agreement in place until 2011 which called for payment by [Aetna] of 100% of the billed charges for services provided to its members.  [But] that agreement expired on January 1, 2011."[4]  This case centers on CHOMP's allegation that during the time CHOMP was an out-of-network noncontracted provider"[5] "Aetna . . . failed to pay in full the charges due to [CHOMP] concerning the care and treatment provided to Patient" during three separate emergency room visits.[6]

As to the first visit in February 2013, CHOMP admitted the patient to its emergency room for "severe diabetic ketoacidosis."  CHOMP promptly contacted Aetna for authorization to treat the patient, and Aetna verified the patient's insurance eligibility.[7]  CHOMP alleged that it relied on this verification in treating the patient during her stay at the hospital.[8]  The day after the patient was

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[3] *See id.*

[4] Docket No. 36 at ¶ 3.

[5] Docket No. 29-1 at ¶ 3.

[6] *Id.* at ¶ 20.

[7] *See id.* at ¶¶ 4, 5.

[8] *See id.* at ¶ 5.

Case No. 5:14-cv-01518-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

released, "Aetna's utilization review department provided express retro-active approval, both oral and written, for the treatment provided to Patient."[9]  CHOMP later billed Aetna "$87,519.00 for the [February] services provided to Patient."[10]  Aetna "paid $11,147.14 and denied $76,383.86 on the principal basis that the '[charges] exceed contract.'"[11]

As to the second visit in July 2013, CHOMP re-admitted the patient to its emergency room for the same medical condition.[12]  "At the time of admission . . . Aetna again verified Patient's insurance eligibility."[13]  During this stay, CHOMP informed Aetna of the patient's condition and requested authorization for treatment almost daily.[14]  While Aetna requested that the patient be transferred to another hospital—that was in-network[15]—"Aetna cancelled the transfer request on [two consecutive days] because the Patient was not stable to move."[16]  Instead, Aetna verbally authorized additional treatment for the patient as an "out of network admit"[17] and said that it "would review further authorization for continued treatment again the following day."[18]  CHOMP

---

[9] *Id.* at ¶ 6.  "The process of daily telephone communication between a hospital and a health plan regarding ongoing patient treatment is known in the healthcare industry as 'utilization review.' The purpose of the utilization review process is to ensure that medical providers and health plans agree on the medical necessity of services being provided.  Providers regularly rely on the authorizations provided through the utilization review process, in conjunction with separate verifications of patients' benefits, as representations that health plans will pay for the authorized services subject only to lawful exclusions."  Docket No. 36 at ¶ 12.

[10] Docket No. 34 at 2.

[11] *Id.* (internal footnote omitted).

[12] *See* Docket No. 1, Exh. A at ¶ 9.

[13] *Id.* at ¶ 10.

[14] *See* Docket No. 34 at 3.

[15] The distinction between in-network and out-of-network providers is relevant to a given insurer's reimbursement rate.

[16] Docket No. 29 at 5.

[17] Docket No. 36 at Exh. H. *See also* Docket No. 37 at ¶ 5; Docket No. 34 at 3.

[18] *Id.*.

3

alleged that it relied on these authorizations in providing continued treatment.[19]  "Subsequent to Patient's July [] discharge, [CHOMP] received written authorization from [Aetna] for Patient's treatment which included extensive disclaimer language."[20]  CHOMP later billed Aetna "$84,711.00 for the [July] services provided to Patient."[21]  Aetna "paid $20,458.59 and denied $64,162.41 on the principal basis that the '[charges] exceed contract.'"[22]

As to the third visit in September 2013, CHOMP admitted the patient to its emergency room for diabetic ketoacidosis yet again.[23]  "At the time of admission . . . Aetna again verified Patient's insurance eligibility."[24]  CHOMP alleged that it relied on this verification in treating the patient during her stay at the hospital.[25]  The day after the patient was released from the hospital, "Aetna's utilization review department [again] provided express authorization, both oral and written, for the treatment provided to Patient."[26]  CHOMP later billed Aetna "$40,869.00 for the services provided to Patient."[27]  Aetna "paid $13,711.16 and denied $27,157.84 on the principal basis that the '[charges] exceed contract.'"[28]

---

[19] *See id.*

[20] *Id.*  The disclaimer language states:  "Except for services considered to be an emergency, if the health benefit plan includes an out-of-network benefit component for the use of a non-participating provider, claims received for eligible services may be processed at the out-of-network or non-preferred benefit level.  Members may be responsible for higher copayments, deductibles, and coinsurance, plus any charges by the provider in excess of the amounts covered by the plan for services provided by out-of-network provider.  These excess amounts may be significant."  Docket No. 36 at Exh. I.

[21] Docket No. 34 at 4.

[22] *Id.*

[23] *See* Docket No. 1, Exh. A at ¶ 14.

[24] *Id.* at ¶ 15.

[25] *See id.*

[26] *Id.* at ¶ 16.

[27] Docket No. 34 at 4.

[28] *Id.*

Case No. 5:14-cv-01518-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    This suit followed.  CHOMP asserts six causes of action against Aetna, each of which is

2    based on all three of the patient's emergency room visits.[29]  Aetna now moves for summary

3    judgment on the first through fifth causes of action.[30]  In opposition, CHOMP abandoned its claims

4    based on the February and September visits as to the first, second and fifth causes of action.[31]  The

5    claims left for present consideration are:  (1) negligent misrepresentation based on the patient's

6    July visit; (2) breach of implied contract based on the patient's July visit; (3) violation of

7    California's Unfair Competition Laws[32] based on all three visits; (4) common count-open book

8    account based on all three visits and (5) common count-services rendered based on the July visit.[33]

9                                              **II.**

10    This court has jurisdiction under 28 U.S.C. § 1332.  The parties further consent to the

11    jurisdiction of the undersigned under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

12                                              **III.**

13    At this stage of the case, a court "does not assess credibility or weigh the evidence, but

14    simply determines whether there is a genuine factual issue for trial."[34]  Initially, the moving party

15    bears the burden to show that no genuine issue of material fact exists.[35]  If this burden is met, the

---

[29] *See* Docket No. 1, Exh. A at ¶¶ 21-60.

[30] *See* Docket No. 29 at 1.

[31] *See* Docket No. 34.

[32] *See* Cal. Bus. & Prof. Code § 17200.  CHOMP asserts two separate UCL claims.  First, CHOMP alleges that Aetna violated Cal. Health & Safety Code § 1371.8 (addressing rescission or modification of authorizations by a health care service plan) and Cal. Ins. Code § 796.04 (same). Second, CHOMP alleges that Aetna is "required to pay . . . for the emergency services provided to its members without requiring prior authorization, pursuant to the public policy favoring patient access to health care, as stated in" Cal. Health & Safety Code §§ 1317, 1371 and Cal. Ins. Code § 10133.  *See* Docket No. 1, Exh. A at ¶¶ 39-43.

[33] *See* Docket No. 34 at 6-10.  Aetna does not seek summary judgment on CHOMP's sixth cause of action for quantum meruit, acknowledging that there are triable issues of fact based on all three visits.  *See* Docket No. 29 at 1 n.1.

[34] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[35] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

Case No. 5:14-cv-01518-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    burden shifts to the non-moving party.[36]  Applying these standards to CHOMP's claims at issue,

2    the court finds that while certain claims survive for trial, the majority do not.

3         *First*, no reasonable jury could find that Aetna is liable for negligent misrepresentation

4    based on the July visit.  "The elements of negligent misrepresentation are (1) a misrepresentation of

5    a past or existing material fact, (2) made without reasonable ground for believing it to be true,

6    (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable

7    reliance on the misrepresentation, and (5) resulting damage."[37]  CHOMP must prove each element

8    for this claim to succeed.[38]  CHOMP alleges that both "Aetna's verification[] of Patient's eligibility

9    for benefits and [Aetna's] authorization of services" constituted misrepresentations that "Aetna

10   would pay for each of Patient's admission[], care, and treatment."[39]  But Aetna's eligibility

11   verification cannot constitute a misrepresentation of a past or existing material fact—"[i]t is

12   undisputed that the Patient was an Aetna plan member and Aetna verified this fact."[40]

13        The suggestion that Aetna's authorization constitutes a misrepresentation also fails as a

14   matter of law.  CHOMP argues that the "authorizations associated with [the patient's July visit]

15   came in advance of treatment and induced the Hospital to act, thereby forming a basis for the

16   Hospital's negligent misrepresentation claim."[41]  CHOMP reasons that because "authorization of

17   services can amount to an agreement to pay for those services," Aetna's authorization and

18

19

20   ---

[36] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

21   [37] *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182, 196 (2012) (citing *Wells Fargo Bank,
     N.A. v. FSI, Fin. Sols., Inc.*, 196 Cal. App. 4th 1559, 1573 (2011); *Nat'l Union Fire Ins. Co. of
22   Pittsburgh, Pa. v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009)).

23   [38] *See, e.g.*, *Melican v. Regents of the Univ. of Cal.*, 151 Cal. App. 4th 168, 182 (2007) (finding that
     a claim for negligent misrepresentation failed "because none of the plaintiffs [could] demonstrate
24   legal reliance").

25   [39] Docket No. 1, Exh. A at ¶¶ 23-27.

26   [40] Docket No. 29 at 4:11-12.

27   [41] Docket No. 34 at 6 n.2.

28
     Case No. 5:14-cv-01518-PSG
     ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY
     JUDGMENT

1    subsequent failure to pay in full amounted to a misrepresentation.[42]  This logic is flawed for two

2    reasons.  For one, CHOMP conflates the analysis of whether the authorization formed an implied-

3    in-fact contract with whether the authorization constituted a misrepresentation of a past or existing

4    material fact.[43]  The formation of a contract—or lack thereof—is not an element of negligent

5    misrepresentation.[44]  And two, even construing the authorization as a promise to pay, that promise

6    is "manifestly about what [Aetna would be required to] do in the future.  As California law requires

7    a representation of a 'past or existing material fact,' this . . . alleged misrepresentation is

8    inadequate."[45]

9         *Second*, no reasonable jury could find that Aetna breached any implied contract.  To prevail

10   on a breach of contract claim, CHOMP must show (1) "existence of the contract,"

11   (2) "performance by the plaintiff or excuse for nonperformance," (3) "breach by the defendant" and

12   (4) "damages."[46]  "An implied [in fact] contract is one, the existence and terms of which are

---

[42] *Id.* at 6.

[43] *See id.* at 6-7.  CHOMP's reliance on *Enloe Med. Ctr. v. Principal Life Ins. Co.* to support its claim for negligent misrepresentation is misplaced.  Case No. 10-cv-02227, 2011 WL 6396517, at *5-7 (E.D. Cal. Dec. 20, 2011).  CHOMP's reference to *Enloe* focuses on the court's conclusion that "in some instances, a contract may be created on an authorization call."  *Id.* at *6.  The court reached that conclusion during its discussion of whether or not an implied-in-fact contract had been formed.  *Id.* at *5-7.  When analyzing the plaintiff's negligent misrepresentation claim, the court noted that the "claim [was] grounded in the same underlying facts as the claim for an implied in fact contract."  *Id.* at *7.  Because it was not presented with sufficient facts, the court denied the defendant's motion for summary judgment of negligent misrepresentation.  *Id.*

[44] *See Ragland*, 209 Cal. App. 4th at 196.

[45] *Regents of the Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1045 (N.D. Cal. 2006); s*ee also Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d 1184, 1195 (C.D. Cal. 2007).  Additionally, any attempt by CHOMP to hang its negligent misrepresentation claim on the fact that Aetna's alleged verbal authorizations did not contain disclaimer language would be insufficient.  *See* Docket No. 34 at 3; *see Principal Fin. Grp.*, 412 F. Supp. 2d at 1045 ("California negligent misrepresentation law . . . does not impose liability for negligent omissions; some 'positive assertion' is required.");  *see also Tenet Healthsystem Desert, Inc.*, 520 F. Supp. at 1195.

[46] *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001); *see also Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).

7

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    manifested by conduct."[47]  "Whether the parties' conduct creates an implied [in fact contract] is a

2    question of fact determined by looking at the totality of the circumstances."[48]  Here, there is a

3    genuine dispute whether a contract existed between CHOMP and Aetna.  Aetna plainly authorized

4    treatment for the patient during the July visit.[49]  Other courts have held that an authorization "call

5    can constitute a promise to pay for purposes of contract creation."[50]  Relying on Aetna's

6    authorization, CHOMP provided services to the patient.[51]  Aetna's subsequent payment for those

7    services[52] is evidence that, by authorizing treatment, Aetna intended to be bound to pay CHOMP

8    for services provided to the patient.

9        But the dispositive issue here is not whether there was a contract in place, but whether there

10   is any genuine issue that full payment was expected under the contract.  CHOMP contends that

11   "Aetna's verifications of Patient's benefits and authorization of services amounted to a mutual

12   agreement that [CHOMP] would provide the health care services to Patient as medically necessary,

13   and, in exchange, Aetna would pay [CHOMP] for all billed charges incurred in such care and

---

[47] *Enloe Med. Ctr.*, 2011 WL 6396517, at *5 (quoting Cal. Civ. Code § 1621) (internal quotations omitted).

[48] *Id.* at *5 (citing *Kashmiri v. Regents of the Univ. of Cal.*, 156 Cal. App. 4th 809, 829 (2007)).

[49] *See* Docket No. 37 at ¶¶ 2-4; Docket No. 36 at ¶¶ 9-11; Docket No. 36 at Exh. H; Docket No. 29-5 at Exh. C.

[50] *See, e.g.*, *Cedars Sinai Med. Ctr. v. Mid–West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) (finding, where there was no authorization provided by the insurer, that "verification [alone could not] be construed as a binding contractual agreement"); *Principal Fin. Grp.*, 412 F. Supp. 2d at 1042 (finding, where defendants "provided both verification of coverage and explicit authorization," that it would be reasonable to conclude based on the written authorizations that defendants intended to be bound"); *Enloe Med. Ctr.*, 2011 WL 6396517, at *5 (finding that "in some instances, a contract may be created on an authorization call").  Indeed, "[p]roviders regularly rely on the authorizations . . . as representations that health plans will pay for the authorized services subject only to lawful exclusions."  Docket No. 36 at ¶ 12.

[51] *See* Docket No. 34 at 3:12-15.

[52] *See* Docket No. 29 at 2:10-15; Docket No. 1, Exh. A at ¶¶ 12, 13.

Case No. 5:14-cv-01518-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

treatment."[53]  CHOMP's expectation of 100 percent payment of billed charges, however, is

irreconcilable with the underlying evidence presented to the court.  During Aetna's first

authorization call, it explicitly notified CHOMP that the patient was "an out of network admit."[54]

Indeed Aetna's subsequent authorization letter for the July visit "informed CHOMP that they

would be paid at an out-of-network or non-preferred benefit level for non-emergent services and

that Aetna had not yet verified dollar limits under the plan."[55]  Given these facts, the regularity

with which CHOMP interacts with Aetna and other insurance providers and the standard practice

in the industry, it would have been unreasonable for CHOMP to expect that Aetna's authorization

constituted a promise to pay 100 percent of billed charges.  No reasonable jury could find

otherwise.[56]

   ***Third***, no reasonable jury could find that Aetna is liable for unfair competition, with one

limited exception.[57]

   The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."[58]  "[I]t

establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or

---

[53] *Id.* at ¶ 29.  In its opposition, CHOMP reiterates this expectation, stating that "it understood [Aetna's] representations regarding coverage as a promise of payment subject only to lawful exclusions."  Docket No. 34 at 8:14-15.

[54] Docket No. 36 at Exh. H.

[55] Docket No. 29 at 7.  *See also* Docket Nos. 29-4, 29-5 at Exhs. B, C.

[56] As the parties made clear at oral argument on May 5, 2015, the heart of this dispute is the following question: "what is the reasonable value of the services CHOMP provided to Patient?" This dispute remains alive in CHOMP's quantum meruit claim.  Aetna does not challenge that claim in this motion and acknowledges that "there are genuine issues of material facts" on that question.  Docket No. 29 at 1 n.1.

[57] *See* Docket No. 1, Exh. A at ¶¶ 39, 40.

[58] Cal. Bus. & Prof. Code § 17200.

Case No. 5:14-cv-01518-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT

United States District Court
For the Northern District of California

1    fraudulent. In other words, a practice is prohibited as unfair or deceptive even if not unlawful and

2    vice versa."[59]

3        CHOMP alleges that "Aetna's rescission of the verifications of benefits and authorizations

4    of treatment subsequent to [CHOMP's] provision of health care service to Patient" violated

5    Cal. Health & Safety Code § 1371.8 and Cal. Ins. Code § 796.04 and that this conduct

6    "constitute[d] an unfair business practice in violation of" Cal. Bus. & Prof. Code § 17200.[60]  This

7    claim falls under the "unlawful" prong of the UCL.  Sections 1371.8 and 796.04 state that once a

8    health insurer has authorized treatment for services, it "shall not rescind or modify [the]

9    authorization after the provider renders the health care service in good faith and pursuant to the

10   authorization for any reason."  There is no evidence that Aetna rescinded or modified its

11   authorization in any way.  As to the February and September visits, Aetna issued written

12   authorizations after the patient was released—explicitly stating that coverage was subject to certain

13   exclusions based on the patient's benefit plan.[61]  As to the July visit, Aetna verbally notified

14   CHOMP that the patient was "an out of network admit,"[62] later confirming the same in a written

15   authorization letter that was largely identical to the February and September letters.[63]  It is

16   undisputed that Aetna paid CHOMP for its services.[64]  That CHOMP disputes the amount due—

---

17   [59] *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citing
18   *Podolsky v. First Healthcare Corp.*, 50 Cal. App. 4th 632, 647 (1996)) (internal quotations
     omitted).

19   [60] Docket No. 1, Exh. A at ¶ 39.

20   [61] Specifically, the authorization contained the following language: "Except for services considered
21   to be an emergency, if the health benefit plan includes an out-of-network benefit component for the
     use of a non-participating provider, claims received for eligible services may be processed at the
22   out-of-network or non-preferred benefit level.  Members may be responsible for higher
     copayments, deductibles, and coinsurance, plus any charges by the provider in excess of the
23   amounts covered by the plan for services provided by out-of-network provider.  These excess
     amounts may be significant."  Docket No. 36 at Exhs. C, N; *see also* Docket No. 1, Exh. A at ¶¶ 5-
24   6, 15-16.

25   [62] Docket No. 36 at Exh. H.

26   [63] *See id.* at Exh. I.

27   [64] *See* Docket No. 29 at 2:10-15; Docket No. 1, Exh. A at ¶¶ 7-8, 12-13, 17-18.

10

28   Case No. 5:14-cv-01518-PSG
     ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY
     JUDGMENT

United States District Court
For the Northern District of California

1  without providing evidence that Aetna withdrew authorization[65]—does not support a claim of

2  rescission.[66]

3       CHOMP's UCL claim alleging violation of Section 1371 is on different footing.  Section

4  1371.4 provides:  "[a] health care service plan . . . shall reimburse providers for emergency services

5  and care provided to its enrollees."[67]  In *Bell*, the court found that "the statute must be read to

6  require reasonable reimbursement."[68]  The heart of this lawsuit lies in a determination of the

7  reasonable value of CHOMP's services—a question that will be presented to the jury in the form of

8  CHOMP's quantum meruit claim, which Aetna does not challenge here.  Because the Section

9  1371.4 claim is dependent on a jury determination of what a reasonable reimbursement is, this

10  narrow prong of CHOMP's UCL claim survives.[69]

---

[65] Both statutes explicitly caution that they do not "expand or alter the benefits available" under the policy between the patient and the insurer.  *See* Cal. Health & Safety Code § 1371.8; Cal. Ins. Code § 796.04.

[66] CHOMP also alleges that "Aetna's failure to pay [CHOMP's] claim for emergency services provided to Patient constitute[d] an unfair business practice in violation of" Section 17200.  Docket No. 1, Exh. A at ¶ 40.  CHOMP specifically asserts that "Aetna [was] required to pay [CHOMP] for the emergency services . . . without requiring prior authorization, pursuant to the public policy favoring patient access to health care, as stated in" Cal. Ins. Code § 10133 and Cal. Health & Safety Code § 1317 and § 1371.  *Id.*  CHOMP's claim under Section 10133 is inapposite.  That provision applies to "any disability insurer."  Cal. Ins. Code § 10133.  This matter pertains to health insurance, not disability insurance.  Section 1317 is also inapplicable—there is no dispute that emergency services were provided to the patient and no allegation that Aetna discriminated against the patient.  *See* Cal. Health & Safety Code § 1317; Docket No. 1, Exh. A at ¶¶ 4-20.  To the extent CHOMP invokes the "unfairness" prong under the UCL in this claim by referencing the "public policy favoring patient access to health care," that claim also fails.  Docket No. 1, Exh. A at ¶ 40.  It is undisputed that the patient was treated and that Aetna paid for that treatment, at least in part.  *See* Docket No. 1, Exh. A at ¶¶ 4-20.

[67] Cal. Health & Safety Code § 1371.4; Cal. Health & Safety Code § 1371 states that "[a] health care service plan . . . shall reimburse claims or any portion of any claim . . . as soon as practicable, but no later than 30 working days after receipt of the claim by the health care service plan."  The timing of Aetna's payment is not at issue here—CHOMP's complaint admits that Aetna at least partially paid CHOMP within 30 days of each visit.  *See* Docket No. 1, Exh. A at ¶¶ 7-8, 12-13, 17-18.

[68] *Bell*, 131 Cal. App. 4th at 220.

[69] CHOMP states in its opposition that its "unfair competition claim is based . . . in part on [Aetna's] misrepresentations regarding coverage."  Docket No. 34 at 9:1-2.  To the extent CHOMP asserts this claim under the "fraudulent" prong of the UCL, such an assertion also fails as a matter of law.  As previously discussed, neither Aetna's verification nor authorizations for the July visit

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Fourth*, CHOMP's claim for common count-services rendered based on the July visit cannot survive summary judgment because no reasonable jury could conclude that Aetna requested CHOMP's services. "A common count is not a specific cause of action . . . rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness."[70] To succeed on a claim of common count for services rendered, CHOMP must show that the services "were performed at the request of defendant."[71]  CHOMP alleges that "Aetna became indebted to [CHOMP] for services rendered to Patient at Aetna's request for which Aetna is obligated to pay."[72]  This allegation is conclusory at best.  According to CHOMP's own statement of facts, "Aetna's utilization review department provided express authorization, both oral and written, for the treatment provided" during the patient's July visit.[73]  Authorizing, by definition, means "[t]o give legal authority" or "[t]o formally approve."[74]  In the health insurance context, it is the patient who first requests service in the form of treatment.  Then, the provider—in this case CHOMP—must seek authorization to provide such treatment from the insurer—in this case Aetna. No reasonable jury could conclude that CHOMP "performed services at [Aetna's] request,"[75] when in fact CHOMP initiated contact with Aetna as to authorization.  CHOMP's common count-services rendered claim fails as a matter of law.

---

constituted misrepresentations.  That logic extends to the verifications and authorizations for the February and September visits as well.

[70] *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004).

[71] *Smith v. Bentson*, 127 Cal. App. Supp. 789, 793 (1932).

[72] Docket No. 1, Exh. A at ¶ 52.

[73] *Id.* at ¶ 11.

[74] *Authorize*, Black's Law Dictionary (10th ed. 2014).

[75] Docket No. 34 at 10.

12

United States District Court
For the Northern District of California

1    ***Fifth***, CHOMP's claim for common count-open book account presents a question of

2    disputed fact for the jury.[76]   CHOMP bases this common count claim on an allegation of open book

3    account with Aetna.[77]   A book account is "a detailed statement, kept in a book, in the nature of

4    debit and credit, arising out of contract or some fiduciary relation."[78]   It "may furnish the basis for

5    an action on a common count . . . when [the account] contains a statement of the debits and credits

6    of the transactions involved completely enough to supply evidence from which it can be reasonably

7    determined what amount is due to the claimant."[79]   The book also must "show against whom the

8    charges are made . . . [and] in whose favor the charges run."[80]   Whether the book account exists,

9    whether its charges are accurate and whether it is open[81] or closed are questions of fact.[82]   The

10   court has already concluded above that an implied contract exists for the July visit.  Similarly, the

11   written authorizations Aetna delivered to CHOMP for the February and September visits

12   demonstrate Aetna's intention to bind itself to pay CHOMP according to the patient's benefit

---

[76] Aetna conflates a claim for open book account with a claim for account stated.  "To constitute an account stated . . . there must be an agreement that the balance is correct, and a promise, either express or implied, to pay such balance."  *Joslin v. Gertz*, 155 Cal. App. 2d 62, 67 (1957).  A claim for open book account does not require an agreement between the parties as to the balance.  *Id.* at 65-66.

[77] *See* Docket No. 1, Exh. A at 7.

[78] *Wright v. Loaiza*, 177 Cal. 605, 606-07 (1918).

[79] *Interstate Grp. Adm'rs v. Cravens, Dargan & Co.*, 174 Cal. App. 3d 700, 708 (1985) (citing *Tillson v. Peters*, 41 Cal. App. 2d 671, 678 (1940)) (internal quotation marks omitted).

[80] *Id.* (citing *Joslin*, 155 Cal. App. 2d at 65) (internal quotation marks omitted).

[81] "A book account is described as 'open' when the debtor has made some payment on the account, leaving a balance due."  *Id.*

[82] *See Starnet Int'l AMC Inc. v. Kafash*, Case No. 09-cv-04301, 2011 WL 845908, at *8 (N.D. Cal. Mar. 8, 2011) (citing *Cochran v. Rubens*, 42 Cal. App. 4th 481, 485 (1996); *Thompson v. Machado*, 78 Cal. App. 2d 870, 874 (1947)).

13

plan.[83]   CHOMP's itemized bills[84] "supply evidence from which it can be reasonably determined what amount" CHOMP claims it is owed.[85]   Aetna counters that CHOMP cannot unilaterally submit an invoice for 100 percent of billed charges and then claim an open book on that amount.[86] But Aetna cites no authority to support the proposition that the parties must agree on the amount of the book account.   And CHOMP has at least "furnish[ed] the basis for an action on a common count."[87]   Because the amount due under the book account is a question of fact, it must go to the jury.[88]

## IV.

The motion for summary judgment is GRANTED-IN-PART.

**SO ORDERED.**

Dated: August 12, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[83] *See* Docket No. 36 at Exhs. C, N; *Principal Fin. Grp.*, 412 F. Supp. 2d at 1042 (finding that "it would be reasonable to conclude based on the written authorizations that defendants intended to be bound, subject to the provisions of the policy").

[84] *See* Docket No. 36 at Exhs. D, E, J, K, O, P.

[85] *Interstate Grp. Adm'rs*, 174 Cal. App. 3d at 708.

[86] *See* Docket No. 42 at 7.

[87] *Interstate Grp. Adm'rs*, 174 Cal. App. 3d at 708.

[88] Once the reasonable value of the services is determined by the jury based on the quantum meruit claim, the jury will then be able to decide whether the book account is open or closed and whether the amount due is accurate.

Case No. 5:14-cv-01518-PSG
ORDER GRANTING-IN-PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT